**Miguel Angel CEDILLOS, Appellant,**

v.

**STATE of Texas, Appellee.**

**Nos. 11–06–00163–CR, 11–06–00164–CR.**

Court of Appeals of Texas, Eastland.

Feb. 14, 2008.

Patrick F. McCann, Houston, for appellant.

Charles Rosenthal, Jr., District Attorney, Carmen Castillo Mitchell, William J. Delmore, III, Assistant District Attorney's Office, Houston, for appellee.

Panel consists of: WRIGHT, C.J., McCALL, J., and STRANGE, J.

## OPINION

RICK STRANGE, Justice.

Miguel Angel Cedillos was indicted for aggravated sexual assault of a child and indecency with a child. Appellant pleaded not guilty to both charges and proceeded to a joint jury trial. The jury found him guilty in both cases and assessed his punishment at twenty-two years confinement in the Institutional Division of the Texas Department of Criminal Justice for the aggravated sexual assault and ten years confinement in the Institutional Division of the Texas Department of Criminal Justice for the indecency with a child. The State moved to have the sentences run consecutively. The trial court, however, ordered them to run concurrently. We affirm.

### Issues on Appeal

Appellant asserts that he was denied his due process rights under the Fourteenth Amendment of the United States Constitution because he was shackled during voir dire and throughout the trial. Next, appellant asserts that the trial court erred in admitting his oral statement. Finally, appellant asserts that trial counsel failed to provide effective assistance of counsel as required by the Sixth Amendment to the United States Constitution.

### Due Process

■ Appellant argues in his first issue that he was denied his Fourteenth Amendment due process rights because he was shackled during voir dire and throughout the trial. The State responds that he waived this issue by not objecting at trial. The record contains two references to appellant being shackled. During voir dire, one of the venirepersons commented on appellant's shackles, stating: "If he's presumed innocent, why is he wearing shackles?" The second reference occurred during the punishment phase. Before appellant took the stand and outside the jury's presence, the trial court said: "Let's take the shackles off so we don't have to take the jury out when he's finished." Appellant did not object on the record to the use of shackles, and the record does not indicate why he was restrained.

■ The Fifth and Fourteenth Amendments of the United States Constitution prohibit the use of physical restraints visible to the jury unless the trial court in its discretion finds that they are justified by an essential state's interest such as physical security, escape prevention, or courtroom decorum. *Deck v. Missouri*, 544 U.S. 622, 628, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). Courts have held that some circumstances justify the use of restraints during trial, including situations where an accused expressed his intention to escape, made threats of physical violence, resisted being brought to court, repeatedly interrupted the court proceedings, attempted to leave the courtroom, or

engaged in other egregious conduct.[1] When an appellant complains of the use of shackles, we first determine if the trial court abused its discretion by allowing appellant to be shackled. If so, we then determine whether appellant suffered harm as a result. *Long v. State,* 823 S.W.2d 259, 282 (Tex.Crim.App.1991).

Appellant acknowledges the lack of an objection but relies upon *Shaw* for the proposition that no objection was required because the trial court had an affirmative duty to indicate on the record why appellant was shackled. *Shaw v. State,* 846 S.W.2d 482 (Tex.App.-Houston [14th Dist.] 1993, pet. ref'd). In *Shaw,* the jury found the defendant guilty of burglary of a building. The defendant elected to have the jury assess punishment. The trial court conducted a punishment hearing, and shortly before the start of closing argument, the defendant requested permission to speak on his own behalf. The trial court denied his request. During the State's closing, the defendant spoke to his counsel in a loud voice. The trial court excused the jury and warned the defendant that he would be restrained if he did not conduct himself as a gentleman. The defendant continued arguing with the trial court, and it ordered him gagged with duct tape and bound. *Id.* at 485–86.

The issue on appeal was whether this restraint was appropriate. The court's opinion contains no indication that the preservation of this issue was in question or how the challenge was preserved. Appellant argues that *Shaw* holds that no objection is necessary because of the opinion's statement that a defendant cannot be physically restrained in the jury's presence "unless there is a showing of 'exceptional circumstances' or a 'manifest need' for such restraints." *Id.* at 486.

There is an important distinction between *Shaw* and this case. In *Shaw,* the restraint order was issued during the trial. The appellate court had the full benefit of the events leading up to the restraint order and, thus, was able to assess the propriety of that decision. The court reversed—not because of what the trial court said or did not say—but because the record as a whole did not "present any extreme conduct on [defendant's] part that warrants the use of physical restraints in the jury's presence." *Id.* at 487. We do not know when the trial court ordered appellant restrained, except that we know it occurred before trial. We do not know why the trial court issued the order, nor do we know what comments or findings were made in connection with that order. We believe that the *Shaw* court correctly held that the trial court's restraint order must be appropriate at the time it is made, but we do not read it to impose a broader affirmative duty to make findings on the record during the course of a trial when the restraint order predates the beginning of trial.

■ The general rule is that the appealing party has the burden to present a record showing properly preserved, reversible error. *See Word v. State,* 206 S.W.3d 646, 651–52 (Tex.Crim.App.2006). This is unaltered by the presence of a constitutional claim. In *Peretz v. United States,* 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991), the Court held that most basic rights of criminal defendants are subject to waiver.[2] We believe

---

1. *See, e.g., Kimithi v. State,* 546 S.W.2d 323 (Tex.Crim.App.1977); *Moore v. State,* 535 S.W.2d 357 (Tex.Crim.App.1976); *Morris v. State,* 382 S.W.2d 259 (Tex.Crim.App.1964); *Shaw v. State,* 846 S.W.2d 482 (Tex.App.- Houston [14th Dist.] 1993, pet. ref'd); *Burks v. State,* 792 S.W.2d 835 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd).

2. The Court cited the following cases in support of the proposition: *United States v. Gag-*

that the same holds true here. Because appellant did not object on the record to the use of restraints in the jury's presence, the issue is waived, and appellant's first issue is overruled.

### Admission of Oral Statement

In appellant's second issue, he asserts that the trial court erred in allowing his oral statement to be entered into evidence. Officer Russell Ackley testified that he took an oral statement from appellant. Appellant filed a motion to suppress the statement, and the trial court held a hearing outside the presence of the jury regarding its admissibility. At this hearing, Officer Ackley testified that he called appellant and asked him to come into the station to discuss the case. Appellant agreed to come in and talk to Officer Ackley. Appellant drove himself to meet with Officer Ackley the next day. Officer Ackley testified that he explained to appellant that he was free to leave at any time. Officer Ackley also said that he showed appellant the exits. He further testified that he gave appellant his *Miranda*[3] warnings. Appellant agreed only to give an oral statement; he would not provide a written statement.

Officer Ackley testified that appellant told him, "I did it. You know I did it. But I don't want to call my daughter a liar." Officer Ackley testified that their conversation lasted twenty to thirty minutes at the most. He further testified that

appellant never indicated that he wanted to terminate the interview. He said that, when the interview was concluded, he showed appellant the door. Officer Ackley testified that he told appellant he would discuss the case with the district attorney's office and then would let him know the status. Officer Ackley testified that, during the interview, appellant was free to leave and that appellant was not restrained in any way. Appellant was not arrested until nearly a year and one-half later. At the hearing, appellant argued that the statement was inadmissible because it was not recorded or memorialized in any way in violation of Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon 2005). The trial court overruled the objection and allowed testimony regarding appellant's oral statement.

■ We review the trial court's admission of evidence under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* The State may not use the defendant's statements when they stem from custodial interrogation without demonstrating the use of procedural safeguards effective to secure the privilege against self-incrimination. *Garcia v. State*, 237 S.W.3d 833, 836 (Tex.App.-Amarillo 2007, no pet.) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602). These

---

*non*, 470 U.S. 522, 528, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) (failure to object to closing of courtroom is waiver of right to public trial); *Segurola v. United States*, 275 U.S. 106, 111, 48 S.Ct. 77, 72 L.Ed. 186 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); *United States v. Figueroa*, 818 F.2d

1020, 1025 (1st Cir.1987) (failure to object results in forfeiture of claim of unlawful post-arrest delay); *United States v. Bascaro*, 742 F.2d 1335, 1365 (11th Cir.1984) (absence of objection is waiver of double-jeopardy defense); *United States v. Coleman*, 707 F.2d 374, 376 (9th Cir.1983) (failure to object constitutes waiver of Fifth Amendment claim).

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

procedural safeguards are set out in Article 38.22, section 3(a):

No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.[4]

 During oral argument, appellant's counsel asserted that the police officer's conduct was designed to circumvent Article 38.22 by making the questioning appear to be part of an investigation when it was really a custodial interrogation. The Texas Court of Criminal Appeals has construed "custodial interrogation" consistently with the meaning under the Fifth Amendment to the United States Constitution. *Wicker v. State,* 740 S.W.2d 779, 785 (Tex.Crim.App.1987). The United States Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. The determination of custody is made on a case-by-case basis after considering all of the objective circumstances. *Dowthitt v. State,* 931 S.W.2d 244, 255 (Tex.Crim.App.1996). A suspect is "in custody" for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree that the law associates with formal arrest. *United States v. Bengivenga,* 845 F.2d 593, 596 (5th Cir.1988).

The Court of Criminal Appeals has outlined four general circumstances that would constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe

---

4. Article 38.22, section 2(a) provides:

[T]he accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 255. Appellant contends that the interrogation was custodial because he was alone at the police station in a back room and was confronted by a hostile witness.

The mere fact that the investigation took place in a police station does not make it custodial. In *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), the defendant voluntarily accompanied the police to the station house, talked for less than thirty minutes, and was permitted to return home. The Court held that the interview was not custodial. Likewise, in *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the defendant came voluntarily to the police station, was informed he was not under arrest, participated in a thirty-minute interview, and left the police station without hindrance. The Court held that interview to be noncustodial as well.

▪ Appellant next argues that, because he was the sole suspect and the police had probable cause to believe that he had committed a crime, the only purpose of the interview was to potentially incriminate him. However, being the focus of the investigation does not equate to custody. *Meek v. State*, 790 S.W.2d 618, 621 (Tex.Crim.App.1990) (citing *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976)). Nor does custody arise just because the questioning took place in a coercive environment. In *Mathiason*, 429 U.S. at 495, 97 S.Ct. 711, the Court stated:

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime.

As noted, the issue is whether the trial court abused its discretion. There was evidence from which the trial court could have concluded that the interview was a custodial interrogation; however, because there was evidence that appellant was informed that he was not under arrest, that he received his *Miranda* warnings, that he was told that he could terminate the interview, and that he was allowed to leave after a twenty- to thirty-minute interview, the trial court did not abuse its discretion by determining that it was not a custodial interrogation. We are mindful of counsel's concern that police officers may sometimes attempt to circumvent Article 38.22, but the resolution of that issue is factually dependent and requires a credibility assessment. We cannot say that in this instance the trial court erred when making that assessment.

▪ Appellant further argues that, because the statement was unrecorded, the jury had to rely solely on the testimony of the officer who interviewed appellant. The fact that the officer's testimony was the only evidence the jury heard regarding the statement goes to the weight and credibility of the evidence. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000).

The trial court did not abuse its discretion by admitting appellant's oral statement. Appellant's second issue is overruled.

### Ineffective Assistance of Counsel

Appellant asserts in his third issue that he received ineffective assistance of counsel. To prevail on a claim of ineffective

assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 693–94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mallett v. State,* 65 S.W.3d 59, 62–63 (Tex.Crim.App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999).

 The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000). Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State,* 877 S.W.2d 768 (Tex.Crim.App.1994); *Hayden v. State,* 155 S.W.3d 640, 648 (Tex.App.-Eastland 2005, pet. ref'd). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson,* 9 S.W.3d at 814 (quoting *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

First, appellant argues that his trial counsel was ineffective because he did not make a motion for the appointment of an investigator even though his client was charged with a serious first-degree felony, punishable by life in prison. Additionally, he asserts that his trial counsel was ineffective because, even though his trial counsel knew that DNA would be an issue, his trial counsel did not request the appointment of a DNA expert. Appellant also asserts that his trial counsel was ineffective because he did not request a psychologist to testify or advise counsel regarding child victims lying about allegations of abuse.

 Appellant's contentions are not supported by the record. Generally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption that counsel's conduct was reasonable. *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). This case is no different. There could be countless reasons for counsel's actions. Appellant faced serious felony charges, but the facts of the case were not so complicated that an investigator or expert would have necessarily been needed. Appellant was the only suspect. The case turned primarily on credibility. We have reviewed the entire record and note that counsel was able to attack during cross-examination the credibility of the State's DNA expert, the child victim, and the outcry witness. Consequently, we cannot say based upon this record that the decision to prepare for trial without the use of an investigator or DNA expert necessarily falls below an objective standard of reasonableness.

Even if we were of the opinion that counsel should have requested an investigator or expert and were to assume that one would have been appointed, we cannot determine if the failure to do so was harmful because there is nothing in the record to show what evidence, if any, an investigator or expert would have provided or helped develop. Without this, we cannot

conclude that their presence would have changed the outcome of the trial.

 Next, appellant asserts that his trial counsel was ineffective for failing to object to his being shackled or for failing to move for a mistrial in response to the veniremember's comments about appellant's restraints. As explained above, the record does not demonstrate why appellant was shackled. Because we do not know why appellant was restrained, we cannot say that an objection or motion for mistrial would have been successful. While we do not condone the lack of an objection or motion, this prevents us from concluding that either would have changed the trial's outcome.

Finally, appellant asserts that his trial counsel was ineffective during the punishment phase by failing to call any friends or family members to provide mitigating evidence, by failing to call a probation officer to testify as to the programs available to monitor and treat or prevent recidivism in sex offenders, and by failing to have a psychologist testify regarding the treatment of sex offenders. The record does not overcome the presumption that appellant's trial counsel acted reasonably during the punishment phase of trial because it is silent as to whether anyone would have testified on appellant's behalf or what they would have said on direct—or more importantly on cross-examination. Appellant testified at the punishment phase of the trial, but he never admitted guilt. Therefore, having a psychologist or probation officer discuss treatment for sex offenders would not have benefitted him. We cannot say, therefore, that trial counsel's actions during the punishment phase were not sound trial strategy or that other conduct would have changed the trial's outcome.

The record before us demonstrates that trial counsel presented a solid defense.

Appellant has failed to rebut the presumption that his trial counsel's actions were reasonable or to establish harm. Therefore, appellant has not shown that he received ineffective assistance of counsel. We overrule appellant's third issue on appeal.

*Conclusion*

We affirm the trial court's judgments.