Matthew Eric WRINKLES, Petitioner,

v.

STATE of Indiana, Respondent.

No. 82S00–0905–SD–249.

Supreme Court of Indiana.

Nov. 3, 2009.

### PUBLISHED ORDER CONCERNING SUCCESSIVE PETITION FOR POST–CONVICTION RELIEF IN CAPITAL CASE

### Introduction

Petitioner Matthew Eric Wrinkles was convicted and sentenced to death for the multiple murders of his wife, her brother, and her brother's wife. Having exhausted the judicial review to which he is entitled as a matter of right, Wrinkles has filed papers seeking permission to litigate a successive post-conviction claim, again arguing that he was denied his right to effective assistance of counsel due to counsel's lack of objection to Wrinkles's wearing of a stun belt restraint during trial and sentencing proceedings. We deny his request, and by separate order set a date for execution of the sentence.

### Case History

In June 1994, Matthew Wrinkles filed for divorce from his wife Debbie, and Debbie obtained a protective order prohibiting Wrinkles from having any contact with her or the couple's two children. At that time, Debbie and the children were living in the home of Debbie's brother Mark Fulkerson and his wife Natalie. On July 20, 1994, following a provisional divorce hearing, Wrinkles and Debbie agreed to meet at a local restaurant so Wrinkles could see his children; however, Debbie and the children did not show up for the meeting. Later that night, Wrinkles tried to contact Debbie at the Fulkersons' home but was unsuccessful. Debbie likewise attempted, unsuccessfully, to arrange another meeting with Wrinkles.

During the early morning hours of July 21, 1994, Wrinkles, wearing camouflage and face paint and armed with a knife and .357 magnum revolver, climbed over a fence into the Fulkersons' yard, cut the phone lines, and kicked in the back door.

Wrinkles fatally shot Mark four times in the presence of his three-year-old son. Next, Wrinkles shot and killed Debbie as the couple's daughter pleaded with Wrinkles not to shoot her mother. Finally, as Natalie tried to flee the house, Wrinkles pursued her to the front porch and shot her in the face at close range, killing her. Wrinkles was apprehended in a neighboring county later that day.

Wrinkles was charged with three counts of murder. *See* Ind.Code § 35–42–1–1(1). The State sought the death penalty, alleging the commission of multiple murders. *See* I.C. § 35–50–2–9(b)(8). The jury found Wrinkles guilty as charged and, in the penalty phase that followed, unanimously recommended the death penalty. On June 14, 1995, Judge Richard L. Young followed the jury's recommendation and imposed the death sentence.

This Court unanimously affirmed Wrinkles's convictions and sentence on direct appeal. *Wrinkles v. State,* 690 N.E.2d 1156 (Ind.1997), *reh'g denied* (1998), *cert. denied,* 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998) (*"Wrinkles I "*). After Wrinkles sought post-conviction relief, in part challenging the use of the stun belt, the trial court denied his petition, and we unanimously affirmed the denial of post-conviction relief. *Wrinkles v. State,* 749 N.E.2d 1179 (Ind.2001), *reh'g denied* (2001), *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002) (*"Wrinkles II "*). Wrinkles then sought, for the first time, permission to file a successive post-conviction petition, which we denied by published order. *Wrinkles v. State,* 776 N.E.2d 905 (Ind.2002) (addressing *Ring v.*

*Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), as well as arguments by Wrinkles regarding the jury venire and comments by the prosecutor). Thereafter, Wrinkles sought relief in federal courts, again challenging in part the use of the stun belt during trial and sentencing. The United States District Court for the Southern District of Indiana, by Tinder, J., denied Wrinkles's petition for a writ of habeas corpus in *Wrinkles v. McBride,* No. IP–01–1668–C–T/K, slip op. (S.D.Ind. May 18, 2005). The United States Court of Appeals for the Seventh Circuit affirmed in *Wrinkles v. Buss,* 537 F.3d 804 (7th Cir.2008), *reh'g and reh'g en banc denied* (2008), *cert. denied sub nom. Wrinkles v. Levenhagen,* —— U.S. ——, 129 S.Ct. 2382, 173 L.Ed.2d 1300 (May 18, 2009).

Following the denial of certiorari by the United States Supreme Court, Wrinkles filed a second request to file a successive post-conviction petition, which is the matter pending before us now.[1] This Court has jurisdiction because the sentence is death. *See* Ind. Appellate Rule 4(A)(1)(a).

## Successive Post–Conviction Procedures

Wrinkles already has utilized the rule that permits a person convicted of a crime in an Indiana state court one collateral review of a conviction and sentence in a post-conviction proceeding. *See* Ind. Post–Conviction Rule 1. Wrinkles now seeks permission to litigate a "successive" post-conviction claim in the trial court where he was convicted.

We perform a screening function with respect to successive post-conviction claims; the petitioner needs our permis-

---

**1.** More specifically, on May 27, 2009, Wrinkles filed a "Tender of Successive Post–Conviction Petition" and tendered a proposed "Petition for Post–Conviction Relief." After we issued an order permitting responsive briefing, the State filed a "Verified Response in Opposition to Motion for Permission to Proceed on a Successive Post–Conviction Relief Petition," and Wrinkles filed a "Reply To State's Response Regarding Successor Post–Conviction Petition." Wrinkles also submitted additional authority on July 2, 2009, to which the State responded on July 10, 2009.

sion to litigate the merits of such claims. P–C. R. 1 § 12. The petitioner must show a "reasonable probability" that he is entitled to relief. P–C. R. 1 § 12(b). In deciding whether a petitioner has made the required showing, we consider the applicable law, the successive post-conviction papers, materials from the prior appeals and post-conviction proceedings including the record, briefs and court decisions, and any other material we deem relevant. *See id.* Authorization of a successive post-conviction proceeding would entitle Wrinkles to counsel at public expense, and the case would return to the trial court for further proceedings in accordance with Post–Conviction Rule 1. *See Baird v. State,* 833 N.E.2d 28, 30 (Ind.2005), *cert. denied,* 546 U.S. 924, 126 S.Ct. 312, 163 L.Ed.2d 269 (2005).

### Wrinkles's Claim

Wrinkles was required to wear a stun belt restraint at trial. He once again claims that he received ineffective assistance of counsel during the guilt and sentencing proceedings because counsel did not object to the restraint. This claim has been raised repeatedly and thoroughly vetted in the post-conviction court, on appeal from the denial of post-conviction relief, in habeas corpus proceedings in federal district court, and on federal appeal from the denial of habeas relief. Each time, the courts have concluded that Wrinkles was not denied effective assistance of counsel. While Wrinkles now seeks the chance to litigate this claim again based in part on differences in how the various courts rejected it, we conclude that the denials of relief were largely complementary.

A claim of ineffective assistance of counsel involves two components. First, the petitioner must establish that counsel's performance was deficient, in that counsel's representation fell below an objective standard of reasonableness. *See Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Second, the petitioner must establish that the deficient performance prejudiced his defense. In other words, the petitioner must show that but for counsel's errors, the result of the proceeding would have been different. *See id.* at 694, 104 S.Ct. 2052.[2]

Throughout his post-conviction and habeas corpus proceedings, and again in his successive post-conviction papers, Wrinkles has argued that counsel should have objected to the use of the stun belt. As acknowledged in this Court's opinion in *Wrinkles II* that prospectively barred the use of stun belts in Indiana courtrooms, this manner of restraint has the potential to compromise the presumption of innocence and a defendant's ability to participate in his own defense. *See Wrinkles II,* 749 N.E.2d at 1193–95. In this case, Wrinkles asserts he was prejudiced because, according to Wrinkles, several jurors either saw or otherwise were aware that Wrinkles was wearing a stun belt. Much ink has been devoted to this factual question. *See* Post–Conviction Record ("R.") at 582–84, 590, *Wrinkles II* (No. 82S00–9803–PD–170) (post-conviction court's findings of fact and conclusions of law); *Wrinkles II,* 749 N.E.2d at 1192, 1195; *Wrinkles v. McBride,* No. IP–01–1668–C–T/K, slip op. at 7–9; *Wrinkles v. Buss,* 537 F.3d at 815–23; *id.* at 823–29

---

**2.** We note that Wrinkles's successive post-conviction papers appear to rely exclusively on *Strickland's* formulation of the prejudice prong of an ineffectiveness claim. *See, e.g.,* "Tender of Successive Post–Conviction Petition" at 2 ("At issue then and now is the oft-cited standard of *Strickland* ..."); at 7 (arguing "this Court never resolved the prejudice component of Wrinkles' restraint-based *Strickland* claim"); and at 9 ("Wrinkles ... asks this Court to permit him to be heard on his *Strickland*-based restraint claim").

(Rovner, J., dissenting). Each time a court has reviewed this claim, however, the court has concluded Wrinkles was not deprived of his right to effective assistance of counsel.

In its detailed 43–page order denying post-conviction relief, the post-conviction court concluded that Wrinkles failed to meet his burden of proving "that the belt was visible or that the jury knew about it." R. at 583. In so deciding, the post-conviction court found the juror affidavits relied upon by Wrinkles to be inconsistent with one another, inconsistent with the bailiff's affidavit, inconsistent with the recollections of both of Wrinkles's trial attorneys, and not subjected to cross-examination. *See id.* Further, in a hearing on post-judgment motions, the post-conviction court found additional juror affidavits tendered by Wrinkles after the hearing to be cumulative and not of a nature that "would have any effect on the court's ruling." R. at 669. The post-conviction court's factual findings were carefully considered by this Court in affirming the denial of post-conviction relief, by the federal district court in denying Wrinkles's petition for writ of habeas corpus, and by the Seventh Circuit in affirming the denial of habeas relief. Each time the post-conviction court's findings have been reviewed, relief has been denied.

Just as importantly, Wrinkles's failure to establish the prejudice prong of his ineffective assistance claim is not limited to whether jurors were aware of the belt. The post-conviction court also found a lack of prejudice because jurors already knew Wrinkles was incarcerated and because the evidence overwhelmingly established Wrinkles's guilt. *See* R. at 590. We agree with the post-conviction court on these points. Further, the evidence in this case leaves little doubt regarding both the existence and weight of the multiple murder

aggravator rendering Wrinkles eligible for the death penalty, and this Court independently evaluated the propriety of Wrinkles's sentence on direct appeal. *See Wrinkles I,* 690 N.E.2d at 1168–73 & n. 31; *see also Baird v. State,* 604 N.E.2d 1170, 1182 (Ind.1992) (characterizing the multiple murder aggravator as "an aggravating circumstance in the highest range"). In the middle of the night, Wrinkles dressed in camouflage and face paint, cut the phone lines, kicked in the door of the Fulkersons' home, shot and killed two people in the presence of children, then shot and killed a third person after pursuing her as she attempted to flee the carnage. Wrinkles has fallen far short of showing a reasonable probability that, but for his counsel's lack of objection to the imposition of a stun belt restraint, the result of Wrinkles's trial or sentencing would have been different. Indeed, we say that given these facts there is no reasonable doubt that relitigating the prejudice prong of Wrinkles's claim would lead to the conclusion that his lawyers' handling of the matter contributed to the verdict or penalty.

### Conclusion

Wrinkles has not met his burden of establishing a reasonable possibility that he is entitled to post-conviction relief. Accordingly, we decline to authorize the filing of a successive petition. A date for execution of the death sentence will be set by separate order.

Rehearing should not be sought if Wrinkles intends merely to raise the same arguments we already have addressed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.

BOEHM, J., dissents with opinion.

BOEHM, Justice, dissenting.

I would grant Wrinkles's request for a successive post-conviction hearing limited

to the determination of whether the penalty phase of Wrinkles's trial was held in violation of the Fourteenth Amendment. Because I believe the resolution of this case is far from simple, and involves the interplay among several legal doctrines, I attempt to summarize my reasoning at the outset. I elaborate below.

## I. Summary

Wrinkles claims ineffective assistance of counsel for failure to object to his appearing in restraints at his trial. This is the same claim he raised in his first post-conviction proceeding, where he was denied relief. In Wrinkles's appeal from the denial of post-conviction relief, we rejected this claim on the ground that he would have appeared in restraints even if his counsel had raised the objection. We did not address the point that an individualized determination of need for restraints is required, and appearance in restraints would therefore be reversible error unless the State established beyond a reasonable doubt that it was not prejudicial. An objection to restraints should have triggered a hearing as to the need for restraints. If, after a hearing, the trial court would have found a need for restraints and the record would support that finding, there was no prejudice from the failure to object and trigger a hearing. But if no need could be established, Wrinkles was indeed prejudiced by the failure to object.

Although the State bears the burden on direct appeal to establish lack of prejudice from restraints, in post-conviction proceedings Wrinkles bears the burden to establish his right to relief, which includes his showing a reasonable probability that either 1) he would not have been required to appear in restraints, or 2) the record supporting this need would have required reversal. The record before us is sufficient to establish a reasonable probability that the need for restraints could not be shown.

The proof of Wrinkles's guilt was so clear that lack of prejudice in the guilt phase is established beyond a reasonable doubt. The same cannot be said of the penalty phase, so I would grant Wrinkles's request for leave to file a successive petition for post-conviction relief limited to the issue of ineffective assistance for failure to object to restraints.

A convicted person gets only one opportunity to raise a claim of ineffective assistance of counsel in violation of the Sixth Amendment. Wrinkles has already presented a claim of ineffective assistance. In an ordinary case, that would preclude revisiting that issue. This is a death penalty case, however, and the claim relates only to the penalty, not conviction as to which the lack of prejudice seems clear. I would not permit a death sentence to be carried out without assuring that it has been imposed in accordance with the law.

## II. Facts and Procedural History

The majority recites most of the relevant facts and procedural history. In short form, Wrinkles was charged with three counts of murder. *See* Ind.Code § 35–42–1–1(1) (2004). The State sought the death penalty, based on the statutory aggravating circumstance of multiple murders. *See* Ind.Code § 35–50–2–9(b)(8). In the penalty phase that followed the jury's guilty verdicts, the jury unanimously recommended the death penalty. The case was tried under the previous version of the Indiana death penalty statute, which left the sentence to the judge regardless of the jury's recommendation. Ind.Code § 35–50–2–9(e)(2) (1994). The trial court imposed the death sentence.

This Court unanimously affirmed Wrinkles's convictions and sentence on direct appeal. *Wrinkles v. State (Wrinkles I),* 690 N.E.2d 1156 (Ind.1997), *reh'g denied, cert. denied,* 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998). The direct appeal

raised no issue based on Wrinkles's wearing a stun belt in both the guilt and penalty phases of his trial. Wrinkles sought post-conviction relief challenging the use of the stun belt. The trial court denied that petition, and we unanimously affirmed the denial of post-conviction relief. *Wrinkles v. State (Wrinkles II)*, 749 N.E.2d 1179 (Ind.2001), *reh'g denied, cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002). Wrinkles then sought permission to file a successive post-conviction petition. We denied that request by published order. *Wrinkles v. State,* 776 N.E.2d 905 (Ind.2002) (addressing *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)). Wrinkles then sought federal habeas relief, alleging among other grounds the use of the stun belt as a violation of the Fourteenth Amendment. The United States District Court for the Southern District of Indiana denied relief, *Wrinkles v. McBride,* No. IP–01–1668–C–T/K, slip op. (S.D.Ind. May 18, 2005), the Seventh Circuit affirmed, *Wrinkles v. Buss,* 537 F.3d 804 (7th Cir.2008), *reh'g and reh'g en banc denied* (7th Cir.2008), and the Supreme Court denied certiorari, *Wrinkles v. Levenhagen,* —— U.S. ——, 129 S.Ct. 2382, 173 L.Ed.2d 1300 (May 18, 2009).

Wrinkles next filed a second request to file a successive post-conviction petition which is before us now. Pursuant to Post–Conviction Rule 1, Section 12(b), the standard for granting such a petition is a "reasonable possibility" that the petitioner is entitled to relief. The petition is presented to this Court because the sentence is death. Ind. Appellate Rule 4(A)(1)(a); Post–Conviction Rule 7.

### III. Analysis of Wrinkles's Claim

Wrinkles's claim is simply stated: he contends he received inadequate assistance of counsel in violation of the Sixth Amendment right to counsel when his attorneys failed to object to the use of the stun belt at his trial. He argues that even if conviction was inevitable based on the evidence of his guilt, the penalty was not a foregone conclusion. He contends that if he had appeared without restraints, there is a reasonable probability of a different recommendation by the jury as to the penalty, and a reasonable probability that the trial judge would not have imposed death without a jury recommendation.

I start with the familiar doctrine first announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that an ineffective assistance of counsel claim requires a showing of both substandard performance by counsel and resulting prejudice, usually described as a "reasonable probability" of a different result had counsel performed adequately. *Id.* at 694, 104 S.Ct. 2052. Layered on top of this is the requirement under Post–Conviction Rule 1, Section 5, that the petitioner bears the burden of proof in establishing his claim to relief. We also have the holding from this Court in 2001, applied prospectively only, that stun belts are not to be used in this state, and expressing the view that stun belts are prejudicial not only by reason of the jury's perception of the defendant as a dangerous person, but also because of the belt's effect on the wearer. *Wrinkles II,* 749 N.E.2d at 1194. Finally, in *Deck v. Missouri,* 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005), the Supreme Court of the United States explained that unnecessary shackling visible to the jury is inherently prejudicial and the State bears the burden of showing beyond a reasonable doubt that it "did not contribute to the verdict." *Id.* at 635, 125 S.Ct. 2007 (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

### A. *Inevitability of Restraints at Wrinkles's Trial*

Wrinkles requests permission to assert his claim that he received ineffective assis-

tance of counsel because "his counsel dropped a crucial ball by permitting him, without objection, to be visibly restrained in front of the jury." As I understand the claim, it is not principally a claim that the stun belt Wrinkles wore was necessarily more prejudicial than shackles. Rather the claim is that counsel failed to object to any form of shackling, essentially deferring without objection to a perceived "policy" of the judge to insist on restraints in high profile cases. It is clear that counsel raised no objection to restraints, and equally clear that under governing federal constitutional precedent at the time of Wrinkles's trial, a defendant was not to appear before the jury in restraints without an individualized determination that the restraints were necessary for safety or order in the courtroom or to prevent escape. *Holbrook v. Flynn,* 475 U.S. 560, 568–69, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986); *Illinois v. Allen,* 397 U.S. 337, 343–44, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Coates v. State,* 487 N.E.2d 167, 169 (Ind. Ct.App.1985), *overruled on other grounds* by *Hahn v. State,* 533 N.E.2d 618 (Ind.Ct. App.1989) ("the facts and reasoning supporting the trial judge's determination that restraints are necessary must be placed on the record"). When Wrinkles appealed his conviction to this Court in 1997, he raised multiple issues, none of which challenged either the use of the stun belt in particular or the need for any form of restraint. *Wrinkles I,* 690 N.E.2d at 1158–73.

Wrinkles's first petition for post-conviction relief in 2001 did assert ineffective assistance of counsel, citing both failure to object to the belt and failure to object to any form of restraint. The post-conviction court denied relief, principally based on its finding that Wrinkles had not established that the belt was visible. On appeal of that judgment, we held that it was not ineffective assistance to accept the stun belt over shackles because the belt was thought to be less visible and therefore less likely to affect the jury's perception of Wrinkles as a dangerous person. *Wrinkles II,* 749 N.E.2d at 1195. This decision was held to be a "tactical" or "strategic" call within counsel's discretion, and not substandard performance.

In *Wrinkles II* we also addressed the claim of ineffective assistance for failure to object to any restraint. We did not resolve that claim on the basis of lack of prejudice due to lack of visibility. Rather, we held that "an objection to wearing restraints would not have been sustained by the trial judge even if made." *Id.* In other words, Wrinkles would have appeared in restraints even if his counsel had objected and triggered a hearing as to particularized circumstances. Although we stated this as a reason why Wrinkles's counsel had performed adequately, it is relevant to both the performance and prejudice prongs of a *Strickland* claim. Subsequently, in considering a similar issue in an appeal from the denial of post-conviction relief in another death penalty case, we described our *Wrinkles II* holding as rejecting Wrinkles's claim of ineffective assistance for lack of proof of the prejudice prong. *Stephenson v. State (Stephenson II),* 864 N.E.2d 1022, 1036 (Ind.2007). *Stephenson II* misdescribed what *Wrinkles II* said, but I believe *Stephenson II* was correct in describing the issue raised by Wrinkles's failure to object to any restraint as a failure to prove prejudice. If there was no reasonable probability that an objection would have led to a restraint-free trial, there was no prejudice from counsel's failure to object.

We were correct in *Wrinkles II* in rejecting Wrinkles's claim only if we were correct that Wrinkles's appearance in restraints was inevitable if an objection had been lodged. As to the performance prong, as Judge Springmann pointed out

in ruling on Stephenson's subsequent habeas petition, if an objection had been made and the trial judge overruled it without an individualized determination, we would have been obliged to reverse and order a new trial. *Stephenson v. Levenhagen (Stephenson III)*, No. 3:07–CV–539–TS, 2009 WL 1886081, at *9 (N.D.Ind. July 1, 2009) (quoting *Stephenson II*, 864 N.E.2d at 1038 (citing *Chapman*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705)). It was therefore inadequate representation to accept the trial court's "policy" without objection, if there was a reasonable probability that an objection would have been successful. By "successful," I mean an objection would have produced a hearing at which no particularized need was established, so either no restraints would have been ordered or the presumption of prejudice from visible restraints would have dictated a reversal. Indeed, we so held in *Stephenson II* in evaluating Stephenson's claim of ineffective assistance for failure to object to restraints. 864 N.E.2d at 1033.[3]

### B. *Burden of Proof in Post–Conviction Proceedings*

There is little direct authority on the question of who bears the burden of proof in post-conviction proceedings as to the prejudice prong of an ineffective assistance claim based on counsel's failure to object to restraints, where the effect of that failure is to deny the defendant a hearing on the particularized need for some form of restraint. The principal federal authority squarely addressing the burden of proving prejudice from counsel's failure to object to restraints is *Marquard v. Sec'y for the Dep't of Corr.*, 429 F.3d 1278, 1313 (11th Cir.2005), which concluded that the Supreme Court's then-recent decision in *Deck* "did not address, much less alter, the burden and different required prejudice showing on Marquard's IAC shackling claim."

We addressed this issue in *Stephenson II*, where we noted the absence of proof of a need to impose restraints on Stephenson at his trial. In reviewing the post-conviction court's factual determinations under a clearly erroneous standard, we found that the record included evidence of a death threat to a witness and indications of organized criminal activity, and upheld the post-conviction court's finding that "in view of all the circumstances surrounding this case and this Defendant, including the extremely violent nature of the murders committed, the use of the electronic restraint belt was warranted, reasonable and necessary under these circumstances." *Stephenson II*, 864 N.E.2d at 1040–41. We took these findings by the post-conviction court as a determination that the circumstances surrounding Stephenson's trial were such that shackling would have been ordered, and concluded that on the record before the post-conviction court that finding was not clearly erroneous. *Id.* We noted that "in a direct appeal *Deck* shifted

**3.** I nonetheless adhere to the view expressed in *Wrinkles II* that failure to raise an issue of restraints is not necessarily substandard performance. If, on the information available to counsel at the time of trial, there was no reasonable probability that an objection would produce a different result—either no use of restraints at the trial or reversal on appeal if they were used—failure to raise an objection has no adverse effect on the defendant. Counsel cannot be faulted for failing to raise an issue that will accomplish nothing and may risk antagonizing the judge by insisting on what may be perceived as an unnecessary exercise. Moreover, if the effect of an objection to restraints would have been nothing more than an additional hearing generating findings of particularized necessity that would have stood up on appeal, the defendant suffered no prejudice from counsels' failure to object.

the burden to the state to prove harmlessness of shackling without a specific-needs inquiry." *Id.* at 1038. We concluded that in post-conviction proceedings the petitioner nevertheless retained the burden of showing a reasonable probability of a different result, quoting *Marquard,* 429 F.3d at 1313.

In *Stephenson III,* the federal district court viewed the evidence of threats and organized crime as relevant only to the crime itself, and not to the issue of trial security. 2009 WL 1886081 at *9. The court then took the absence of evidence in the post-conviction hearing as establishing the lack of need for restraints, effectively placing the burden on the State to demonstrate a need for restraint in regards to the post-conviction claim for relief. *Id.* *Stephenson III* thus appears to be inconsistent with my view of the burden of proof in post-conviction proceedings, but I find no other contrary authority, and respectfully adhere to the view adopted in *Stephenson II.*

I find only a few state cases squarely addressing the question of burden of proof of prejudice from counsel's failure to object to restraints, and the sparse authority seems consistent with our opinion in *Stephenson II.* The Georgia Supreme Court recently rejected a post-conviction claim of ineffective assistance for failure to object to shackles. The court noted that on direct appeal there was a presumption of harm that the State must rebut beyond a reasonable doubt, but a claim in post-conviction requires a showing of "a reasonable probability that the shackling affected the outcome of the trial." *Whatley v. Terry,* 284 Ga. 555, 668 S.E.2d 651, 663 (Ga.2008) (citing *Marquard,* 429 F.3d at 1312–14); *see also Cedillos v. State,* 250 S.W.3d 145, 154 (Tex.Ct.App.2008) (holding that because the record did not explain the reason for shackling, the court could not determine whether an objection would have been successful, and there was therefore no showing that the outcome would have changed).

In sum, I conclude that the presumption of prejudice from shackling is available at trial and on direct appeal, but in post-conviction proceedings the burden shifts to the defendant to establish substandard performance by counsel and resulting prejudice. A claim of ineffective assistance for failure to object therefore requires a showing of a reasonable probability that an objection, if raised, under the applicable law would have produced the absence of restraints or a reversible error in requiring restraints.

## C. *Visibility*

As for the claim that it was ineffective assistance to fail to object to any restraint, a major battleground in Wrinkles's first post-conviction proceeding was whether the restraint was perceived by the jury. The State contended it was not perceived and therefore there was no prejudice from failure to object to its use. The post-conviction court found that the belt was not visible. The post-conviction court rejected the affidavits of three jurors who stated they were aware of the belt on the ground that 1) they were inconsistent with each other; 2) they were inconsistent with the testimony of the trial court bailiff; 3) defense counsel testified that the belt was not visible; and 4) the affidavits were not subjected to cross-examination. After the post-conviction court denied relief, affidavits from four more jurors were submitted in support of Wrinkles's petition for rehearing, but they were excluded as cumulative.

In *Wrinkles II* we observed that it appeared that trial counsels' assumption that the jury was unaware of the belt was "obviously" incorrect. *Wrinkles II,* 749

N.E.2d at 1195. In federal habeas proceedings, the jurors' awareness of the belt became the focus of debate. The district court denied habeas, citing the post-conviction court's finding that no juror was aware of the belt. The Seventh Circuit affirmed, noting that this passage from our opinion in *Wrinkles II* could be taken as a determination that some jurors had in fact seen the belt, but ultimately concluding that this Court had not made such a finding. *Wrinkles v. Buss,* 537 F.3d 804, 818–23 (7th Cir.2008). The Seventh Circuit was correct that we made no such assumption or finding. In my view, our rejection of Wrinkles's claim of inadequate assistance of counsel for failure to object to restraints was based on our conclusion that the belt would have been in place with or without an objection by Wrinkles's counsel, not on the belt's visibility vel non. We did not hinge our opinion on the post-conviction court's finding that jurors were unaware of the belt, nor did we address Wrinkles's claims that the post-conviction court erred in discrediting the post-trial affidavits of three jurors stating that they were aware of the belt and in refusing to accept affidavits to the same effect from four others.

### D. Resolution of Wrinkles's Successive Petition for Post–Conviction Relief

In *Wrinkles II* we cited the trial court's policy as the reason the belt would have been used if objection had been raised. I think that summarized a more complicated line of reasoning that leads to the same result, but only if the premise is correct that the use of restraints was inevitable with or without an objection by counsel. In post-conviction proceedings, the defendant bears the burden of proving that counsel's performance was deficient and also that there is a reasonable probability that the deficient performance affected the result of the trial. There was a total lack of evidence in Wrinkles's post-conviction record to resolve the "particularized need" issue one way or the other. Similarly, there is no evidence of the information available to counsel at the time. But based on our conclusion that restraints were inevitable with or without an objection by the defense, we found that Wrinkles failed to establish both the performance and prejudice prongs of his claim of ineffective assistance.

Although I concurred in *Wrinkles II,* I now believe we erred in hinging our analysis on the trial court's policy. I also believe the showing Wrinkles has made today is sufficient to cast doubt on our conclusion in *Wrinkles II* that restraints were inevitable even if an objection had been lodged. The Supreme Court of the United States has long held that unnecessary shackling is inherently prejudicial. *Deck,* 544 U.S. at 635, 125 S.Ct. 2007; *Holbrook,* 475 U.S. at 568, 106 S.Ct. 1340. *Deck* also placed the burden on the State to show beyond a reasonable doubt that unnecessary shackling was not prejudicial. Even if I am correct that our state post-conviction rules can shift the burden of proof in post-conviction proceedings to the defendant to prove prejudice from the restraint, the standard for a Sixth Amendment claim is a reasonable probability "sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. That is to be judged by an objective normalized standard without regard to the proclivities of the particular judge. *Id.* at 695, 104 S.Ct. 2052. The question is thus whether there is a reasonable probability that the restraints influenced the jury's recommendation, and the effect on an objective normalized sentencing judge of the absence of a recommendation in favor of the death penalty.

Unlike *Stephenson II*, the post-conviction court in *Wrinkles II* made no finding as to the inevitability of restraints. Because we have no such finding here, we cannot assume that the trial court, if presented with the relevant controlling authority, would have adhered to a policy that required restraints as a matter of course. I believe the record in *Wrinkles II* was sufficient to raise a reasonable probability that an objection, if raised, would have triggered a hearing that would have led either to a restraint-free trial or to a reversal for failure to establish particularized need for restraint. The evidence of Wrinkles's guilt is such that the presumption of prejudice in the guilt phase is rebutted beyond a reasonable doubt. It is entirely speculative, however, what the evidence as to the need for restraints would have been, or what the effect of a visible belt may have been on the penalty. One of Wrinkles's trial attorneys testified in the post-conviction proceeding that Wrinkles behaved well throughout the case preparation and trial, and that he did not hear any complaints with regard to Wrinkles's behavior in the jail. There was no conflicting testimony, and no evidence of disruptive behavior or flight risk. In my view, the record is sufficient to establish a reasonable probability that there was no need for restraint.

Finally, it is clear that Wrinkles raised essentially the same claim in *Wrinkles II* that he presents today. In any ordinary case either failure to present a theory supporting ineffective assistance or an adverse ruling as to a theory presented would preclude relitigating ineffective assistance in a subsequent post-conviction proceeding. *Stewart v. State*, 517 N.E.2d 1230 (Ind.1988); *cf. Woods v. State*, 701 N.E.2d 1208 (Ind.1998). This is a death penalty case, however, and the issue relates solely to the appropriate penalty. As the Supreme Court of the United States

has famously observed, "death is different." *Ring v. Arizona*, 536 U.S. 584, 606, 122 S.Ct. 2428, 153 L.Ed.2d 556; *see also Gardner v. Florida*, 430 U.S. 349, 357, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). For this reason I would not preclude Wrinkles from exploring the need for restraints in a subsequent post-conviction proceeding.

### Conclusion

Because I believe we erred in rejecting his claim, I would authorize Wrinkles to file a successive petition for post-conviction relief in which the sole issues are (1) whether a form of restraint would have been required if an objection had been raised, (2) what jurors, if any, were aware that Wrinkles was under physical restraint, and (3) what, if any, prejudice Wrinkles suffered from wearing the belt.

