ACCEPTED
14-14-00874-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/9/2015 3:49:27 PM
CHRISTOPHER PRINE
CLERK

## No. 14-14-00874-CR

In the
Court of Appeals
For the
Fourteenth Judicial District of Texas
At Houston

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

7/9/2015 3:49:27 PM

CHRISTOPHER A. PRINE
Clerk

—————————◆—————————

## No. 1381559
In the 177th District Court of
Harris County, Texas

—————————◆—————————

## CHARLES ROBERTS
*Appellant*
v.
## THE STATE OF TEXAS
*Appellee*

—————————◆—————————

STATE'S APPELLATE BRIEF

—————————◆—————————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**CARLY DESSAUER**
Assistant District Attorney

**NATHAN HENNIGAN**
Assistant District Attorney

Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713/755-5826
Fax No.: 713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rule of Appellate Procedure 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Carly Dessauer** — Assistant District Attorney on appeal

**Nathan Hennigan** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Charles Roberts**

Counsel for Appellant:

**Angela L. Cameron** — Attorney on appeal

**Ellis McCullough** — Attorney at trial

Trial Judge:

**Hon. Ryan Patrick**

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...................................................... ii

IDENTIFICATION OF THE PARTIES ............................................................. ii

TABLE OF AUTHORITIES .............................................................................. v

STATEMENT OF THE CASE ........................................................................... 1

STATEMENT OF FACTS ................................................................................. 1

SUMMARY OF THE ARGUMENTS ................................................................. 2

REPLY TO APPELLANT'S FIRST POINT OF ERROR ............................................. 3

I.  Appellant did not preserve his argument that the trial court should not have
    allowed the State to impeach him with his prior conviction for assault of
    a family member because it was not a crime of moral turpitude, and even if
    appellant preserve his argument, any error would be harmless. ................................ 3

    a.  Appellant failed to preserve his argument that his prior conviction of
        assault of a family member was not a crime of moral turpitude because
        appellant did not raise this argument before the trial court. ................................ 7

    b.  Even if appellant had preserved his argument that the trial court should
        not have found his conviction of assault of a family member to be a
        crime of moral turpitude, any error would have been harmless. .......................... 8

REPLY TO APPELLANT'S SECOND POINT OF ERROR .................................... 11

II. Appellant has not met his burden of proving that his trial counsel was
    ineffective for failing to object to the trial court's shackling of appellant
    during the punishment phase of trial or of showing that, but for his
    counsel's alleged ineffectiveness, there is a reasonable probability that the
    result of the proceeding would have been different. .................................................. 11

    a.  Appellant has not meet his burden of showing that his counsel was
        ineffective for failing to object to the trial court allowing appellant to be
        shackled during the punishment phase of trial because the record is
        silent as to his counsel's possible reasons for not objecting. ............................... 15

b. Assuming that appellant's counsel rendered ineffective assistance of counsel by failing to object to appellant's leg irons during the punishment phase of trial, appellant has not shown a reasonable probability that, but for his counsel's failure, the result of the proceeding would have been different. ....................................................................... 19

REPLY TO APPELLANT'S THIRD POINT OF ERROR ........................................ 22

III. Appellant was not egregiously harmed by the trial court's failure to instruct the jury that it had to find that appellant committed his extraneous bad acts of fighting, disruptive conduct, and threatening beyond a reasonable doubt. ........ 22

CONCLUSION ....................................................................................................... 31

CERTIFICATE OF COMPLIANCE ................................................................... 32

CERTIFICATE OF SERVICE ............................................................................. 33

# TABLE OF AUTHORITIES

**CASES**

*Allen v. State*,
47 S.W.3d 47 (Tex. App.—Fort Worth, pet. ref'd) ...................................................... 25

*Almanza v. State*,
686 S.W.2d 157 (Tex. Crim. App. 1984) .................................................................22, 23

*Andrews v. State*,
159 S.W.3d 98 (Tex. Crim. App. 2005) ........................................................................ 12

*Bagheri v. State*,
119 S.W.3d 755 (Tex. Crim. App. 2003) ...................................................................9, 11

*Batiste v. State*,
73 S.W.3d 402 (Tex. App.—Dallas 2002, no pet.)........................................................ 30

*Bekendam v. State*,
441 S.W.3d 295 (Tex. Crim. App. 2014) ....................................................................5, 8

*Bell v. State*,
415 S.W.3d 278 (Tex. Crim. App. 2013) ...................................................................... 14

*Bluitt v. State*,
137 S.W.3d 51 (Tex. Crim. App. 2004) ........................................................................ 26

*Bone v. State*,
77 S.W.3d 828 (Tex. Crim. App. 2002) ...................................................................14, 17

*Campos v. State*,
458 S.W.3d 120 (Tex. App.—Houston [1st Dist.] 2015, pet. filed).....................4, 5, 9

*Cedillos v. State*,
250 S.W.3d 145 (Tex. App.—Eastland 2008, no pet.) ................................................. 18

*Chambliss v. State*,
No. 14-10-00035-CR, 2011 WL 665323
(Tex. App.—Houston [14th Dist.] Feb. 24, 2011, pet. ref'd)
(mem. op., not designated for publication)................................................................... 9

*Deck v. Missouri*,
544 U.S. 622 (2005)......................................................................................................14, 20

*Garza v. State*,
213 S.W.3d 338 (Tex. Crim. App. 2007) ...................................................................... 13

*Glasscock v. State*,
No. 06-11-00239-CR, 2012 WL 2127514
(Tex. App.—Texarkana June 13, 2012, pet. ref'd)
(mem. op., not designated for publication)................................................................ 20

*Goodspeed v. State*,
187 S.W.3d 390 (Tex. Crim. App. 2005) .............................................................13, 18

*Hardeman v. State*,
868 S.W.2d 404 (Tex. App.—Austin 1993, pet. dism'd)...........................................5, 9

*Huerta v. State*,
359 S.W.3d 887 (Tex. App.—Houston [14th Dist.] 2012, no pet.) .......................... 13

*Huizar v. State*,
12 S.W.3d 479 (Tex. Crim. App. 2000) ..............................................................23, 24

*Huizar v. State*,
29 S.W.3d 249 (Tex. App.—San Antonio 2000, pet.) .........................................28, 29

*Jackson v. State*,
877 S.W.2d 768 (Tex. Crim. App. 1994) .............................................................13, 15

*King v. State*,
953 S.W.2d 266 (Tex. Crim. App. 1997) ...............................................................9, 11

*Lopez v. State*,
343 S.W.3d 137 (Tex. Crim. App. 2011) .............................................................13, 18

*Ludwig v State*,
969 S.W.2d 22 (Tex. App.—Fort Worth 1998, pet. ref'd).......................................... 9

*Martinez v. State*,
313 S.W.3d 358 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ..............24, 26, 27

*Menefield v. State*,
363 S.W.3d 591 (Tex. Crim. App. 2012) ................................................................... 13

*Middleton v. State*,
125 S.W.3d 450 (Tex. Crim. App. 2003)................................................................... 22

*Ngo v. State*,
175 S.W.3d 738 (Tex. Crim. App. 2005) ................................................................... 23

*Norris v. State*,
902 S.W.2d 428 (Tex. Crim. App. 1995),
*overruled on other grounds*, *Roberts v. State*,
273 S.W.3d 322 (Tex. Crim. App. 2008) ................................................................... 10

*Potier v. State*,
  68 S.W.3d 657 (Tex. Crim. App. 2002) ........................................................ 9

*Rylander v. State*,
  101 S.W.3d 107 (Tex. Crim. App. 2003) ..................................................... 13

*Saenz v. State*,
  421 S.W.3d 725 (Tex. App.—San Antonio 2014),
  *reversed on other grounds*, 451 S.W.3d 388 (Tex. Crim. App. 2014) ................................ 16

*Sansom v. State*,
  292 S.W.3d 112 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ........................ 24

*Stevens v. State*,
  No. 01-07-00111-CR, 2008 WL 2743947
  (Tex. App.—Houston [1st Dist.] July 10, 2008, no pet.)
  (mem. op., not designated for publication).................................................................. 18

*Strickland v. Washington*,
  466 U.S. 668 (1984)..............................................................................12, 13, 19

*Stuhler v. State*,
  218 S.W.3d 706 (Tex. Crim. App. 2007) ..................................................... 22

*Theus v. State*,
  845 S.W.2d 874 (Tex. Crim. App. 1992) ..................................................... 4, 9

*Thompson v. State*,
  9 S.W.3d 808 (Tex. Crim. App. 1999) ......................................................... 12

*Wiseman v. State*,
  223 S.W.3d 45 (Tex. App.—Houston 2006, pet. ref'd) ............................... 18

*Zarco v. State*,
  210 S.W.3d 816 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ........................... 28

*Ziolkowski v. State*,
  223 S.W.3d 640 (Tex. App.—Texarkana 2007, pet. ref'd)........................................ 19

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) .................................................... 23

TEX. CODE CRIM. PROC. ANN. art. 37.07, §3(a)(1) (West Supp. 2014)......................... 23

**RULES**

TEX. R. APP. P. 9.4(g) ....................................................................................... ii

TEX. R. APP. P. 9.4(i). ...................................................................................... 32

TEX. R. APP. P. 33.1(a)(1) ............................................................................ 5, 7

TEX. R. APP. P. 38.2(a)(1)(A) .......................................................................... ii

TEX. R. APP. P. 39.1 .......................................................................................... ii

TEX. R. APP. P. 44.2(b) ................................................................................ 9, 11

TEX. R. EVID. 609 .......................................................................................... 4, 8

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with murder (CR at 15; 3 RR at 7-8). After pleading not guilty, a jury trial was held to determine appellant's guilt (CR at 172, 199; 3 RR at 8). The jury found appellant guilty, and per the jury's determination, the trial court sentenced appellant to incarceration for fifty years (CR at 189, 197, 199; 5 RR at 127; 6 RR at 30-31). The court certified appellant's right to appeal, and appellant filed a timely notice of appeal (CR at 179, 202-03).

## STATEMENT OF FACTS

As appellant's points of error involve aspects of his trial rather than the evidence of the offense, the State will present a brief recitation of the facts.

Appellant and Albert Terepo had formerly worked together (3 RR at 35, 124). On New Year's Eve 2012, appellant texted Albert to see if he had any marijuana for sale (3 RR at 24; State's Ex. 44). Albert arranged to sell appellant over $500 of hydroponic marijuana at an HEB parking lot (3 RR at 18; 4 RR at 25, 26, 29, 32, 85; 5 RR at 76). Appellant traveled to the location, but shortly after he arrived, Albert was shot and killed (4 RR at 46, 48-49, 50-52; 5 RR at 27; State's Exs. 47, 48, 49, 50). Responding police did not find any marijuana on Albert or in his vehicle but found a mason jar lid from the container in which Albert had stored the marijuana (3 RR at 44, 59, 61; 4 RR at 120).

1

Using Albert's cellphone history and appellant's phone records, the police suspected appellant's involvement and had him arrested for Albert's murder (4 RR at 36, 39, 43, 62). While in jail, appellant admitted to a family acquaintance that he had killed a man for hydroponic marijuana (4 RR at 82, 84, 85).

## SUMMARY OF THE ARGUMENTS

Appellant did not preserve his argument that the trial court should not have admitted his prior conviction for assault of a family member for impeachment purposes during the guilt phase of trial. As the record establishes, appellant did not argue that his prior conviction was not a crime of moral turpitude to the trial court. His factual claim regarding the identity of the complainant was not a legal objection to the admissibility of the conviction and did not inform that trial court of the legal theory appellant raises on appeal. However, even if appellant's argument had been preserved at trial, any error would be harmless.

Appellant has not met his burden of showing that his counsel was ineffective for failing to the trial court's decision to shackle appellant during the punishment phase of trial. Appellant has not shown that his attorney lacked any strategic reason for not objecting because the record is silent regarding any plausible considerations for counsel's actions. Additionally, the record is underdeveloped regarding what occurred at trial regarding appellant's leg irons and, more importantly, whether the jury perceived them. Further, appellant has not shown that, but for his counsel's

ineffectiveness, if any, there was a reasonable probability that the result of the proceeding would have been different.

Appellant was not egregiously harmed by the trial court's omission of an instruction regarding the State's burden of proof for extraneous offenses and bad acts introduced during the punishment phase of trial.

## REPLY TO APPELLANT'S FIRST POINT OF ERROR

**I.   Appellant did not preserve his argument that the trial court should not have allowed the State to impeach him with his prior conviction for assault of a family member because it was not a crime of moral turpitude, and even if appellant preserve his argument, any error would be harmless.**

In his first point of error, appellant argues that the trial court abused its discretion when it allowed the State to impeach him with a prior conviction for assault of a family member.  Appellant argues in his brief that the conviction was not a crime of moral turpitude because the assault was against his father.  Arguing that crimes of violence against men are not considered crimes of moral turpitude, appellant alleges that the trial court erred in ruling the evidence admissible. However, when making this argument, appellant overlooks that the record does not reflect that he articulated this specific reason for why the conviction was in admissible at trial.  As appellant or his counsel failed to object to the admissibility of his prior conviction under the grounds that it was not a crime of moral turpitude, appellant has not preserved at trial the argument he advances on appeal.  Thus, his first point of error is waived.

3

### Standard of Review

The trial court has "wide discretion" to decide whether to admit evidence of a defendant's prior convictions. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). Reviewing courts will only reverse a trial court's ruling admitting evidence of a defendant's prior convictions upon a showing of a clear abuse of discretion that lies outside the zone of reasonable disagreement. *Theus*, 845 S.W.2d at 881.

### Applicable Law

Under Rule 609 of the Texas Rules of Evidence, evidence that a witness has been convicted of a crime is admissible to attack the witness's credibility if the crime was a felony or involved moral turpitude and the court determines that the probative value of the evidence outweighs its prejudicial effect. TEX. R. EVID. 609(a).

Courts have recognized crimes of moral turpitude to involve "dishonesty, fraud, deceit, misrepresentation, or deliberate violence," matters of "personal morality," conduct committed "knowingly contrary to justice, honesty, principle, or good morals," "baseness, vileness, or depravity," conduct "immoral in itself, regardless of whether it is punishable by law," in that the "doing of the act itself, and not its prohibition by statute, fixes the moral turpitude," or "immoral conduct" that is "willful, flagrant, or shameless, and which shows a moral indifference to the opinion of the good and respectable members of the community." *Campos v. State*, 458 S.W.3d 120, 149 (Tex. App.—Houston [1st Dist.] 2015, pet. filed) (quoting *Escobedo v. State*, 202 S.W.3d 844, 848 (Tex. App.—Waco 2006, pet. ref'd).

4

While most misdemeanor assaultive offenses do not constitute crimes of moral turpitude, courts have recognized exceptions based on the identity of the victim. *Campos*, 458 S.W.3d at 149 (holding assault committed against a child was a crime of moral turpitude as "an assault committed against a child is 'generally regarded by the members of our society as more morally culpable and that the offense involves conduct that is 'knowingly contrary' to 'good morals'"); *see Hardeman v. State*, 868 S.W.2d 404, 407 (Tex. App.—Austin 1993, pet. dism'd) (holding that an assault against a woman is a crime of moral turpitude).

To preserve error on appeal, Texas Rule of Appellate Procedure 33.1 requires that a party present its timely objection to the trial court in a manner that states "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds [are] apparent from the context." TEX. R. APP. P. 33.1(a)(1); *see Bekendam v. State*, 441 S.W.3d 295, 299 (Tex. Crim. App. 2014) (noting that preservation of error is a systemic requirement on appeal). To preserve error, "[t]he complaining party must let the trial judge know what [he] wants and why [he] thinks [he] is entitled to it, and do so clearly enough for the judge to understand." *Bekendam*, 441 S.W.3d at 299. While reviewing courts do not examine with hyper-technical scrutiny whether a party preserved error, the objection made at trial must comport with the argument made on appeal. *Bekendam*, 441 S.W.3d at 299.

## *Relevant Facts*

Appellant decided to testify during the guilt phase of trial, but before he took the stand, the trial court held a hearing regarding the admissibility of appellant's prior convictions outside the presence of the jury (5 RR at 54-55). The record reflects the following exchange between the court, the attorneys, and appellant during this conference:

> **The Court**: Are there any impeachable priors that are at issue?
> **Mr. Mccullough** [Appellant's Counsel]: We would ask that he be - -
> **[Prosecutor]**: There's - -
> **Mr. Mccullough**: - - allowed to testify free of cross-examination for - -
> **[Prosecutor]**: He has a prior for marijuana, but let me make sure that there are no felonies.
> **[Appellant]**: I don't have any felonies.
> **Mr. Mccullough**: I think there's two assaults I was given notice of.
> **[Prosecutor]**: Right.
> **[Appellant]**: Two assaults and a possession.
> **The Court**: [Appellant], you said two assaults and a possession?
> **[Appellant]**: Yes, sir.
> **[Prosecutor]**: He had a probation for assault family member which was revoked. He was convicted of that. It's a crime of moral turpitude.
> **The Court**: From what year? Where?
> **[Prosecutor]**: It was in Liberty County. It says County Court, Liberty, sentenced in 2012.
> **The Court**: Okay.
> **Mr. Mccullough**: I would --
> **[Appellant]**: Me and my father.
> **Mr. Mccullough**: If the Court deems those are relevant, I would ask that the Court to consider that they are more prejudicial than probative.
> **The Court**: Is there anything else from the State?
> **[Prosecutor]**: That's the only crime of moral turpitude or felony.

**The Court**: Okay. Well, it being a conviction for a crime of moral turpitude, assault family member, then I will allow that to be admissible.

So let's take a short break and we'll come back and we'll begin this. (5 RR at 55-57).

When the trial resumed, the State asked appellant on cross-examination if it was true that he had "previously been convicted of assault of a family member," and appellant answered: "In '09, yes, sir, me and my father" (5 RR at 101).

### *Analysis*

a. **Appellant failed to preserve his argument that his prior conviction of assault of a family member was not a crime of moral turpitude because appellant did not raise this argument before the trial court.**

Appellant failed to preserve his argument that the trial court erred when finding his assault of a family member conviction admissible because appellant failed to argue to the court that the conviction was not a crime of moral turpitude. TEX. R. APP. P. 33.1(a)(1). As the record shows, appellant only requested that the trial court allow him to testify free from impeachment and for the trial court to find his prior convictions more prejudicial than probative (5 RR at 55-57). Appellant did not advance the argument that he raises on appeal that the trial court should not have ruled the conviction admissible on the grounds that it was not a crime of moral turpitude (5 RR at 55-57). Indeed, the record establishes that appellant asked the court to allow him to testify free from impeachment of his prior convictions or find that the convictions were more prejudicial than probative (5 RR at 55-57). Thus, appellant preserved an objection to the admissibility of his conviction for its prejudicial nature but did not

7

advance a specific objection to the conviction on the grounds that it was not a crime of moral turpitude. TEX. R. EVID. 609(a).

While appellant points to the fact that appellant stated on the record that "the assault was between his father and himself," Appellant's Br. 16, his nebulous remark, "me and my father," did not transform his attorney's request that appellant be able to testify free from impeachment or his objection to the prior convictions for their prejudicial value into a preserved argument that the conviction was inadmissible because it was not a crime of moral turpitude (5 RR at 56). His argument on appeal simply does not comport with his argument at trial. *Bekendam*, 441 S.W.3d at 299. As such, appellant waived the argument he raises in his first point of error, and this Court should overrule it for lack of preservation.

b. **Even if appellant had preserved his argument that the trial court should not have found his conviction of assault of a family member to be a crime of moral turpitude, any error would have been harmless.**

Assuming for the sake of argument that appellant preserved his argument that his prior conviction of assault of a family member was not a crime of moral turpitude and assuming that the trial court's ruling was erroneous, appellant was not harmed by the admission of the evidence.[1]

---

[1] Because appellant's argument was not preserved, the trial court was not faced with deciding whether appellant's conviction for assaulting his father was a crime of moral turpitude. Thus, it is impossible to say whether the trial court would have erred in ruling the conviction admissible in light of such an argument. No case has discussed whether an assault of a family member or an assault of a parent by a child is a crime of moral turpitude. However, if confronted with such an argument, a ruling favoring admissibility of such an offense of an adult child assaulting a parent could be within

8

## Applicable Law

Errors in evidentiary rulings are generally non-constitutional error. *See Potier v. State*, 68 S.W.3d 657, 662-63 (Tex. Crim. App. 2002). Reviewing courts will reverse a conviction for the erroneous admission of defendant's prior conviction if that admission affected his substantial rights by exerting "a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see* TEX. R. APP. P. 44.2(b). However, the error is harmless if the reviewing court has "fair assurance that the error did not influence the jury, or had but a slight effect." *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

## Analysis

Even assuming that the admission of appellant's prior conviction for assault of a family member was error, appellant's substantial rights were not affected. The State's question regarding appellant's conviction and his acknowledgement of its existence were brief (5 RR at 101). The jury merely heard that appellant was

---

the wide zone of discretion trial courts have when determining the admissibility of evidence. *See Theus*, 845 S.W.2d at 881. A trial court would be within the zone of reasonable disagreement when finding that assaulting one's parent is "morally culpable" and involves "conduct that is 'knowingly contrary' to 'good morals.'" *Campos*, 458 S.W.3d at 149; *see Hardeman*, 868 S.W.2d at 405 (defining crime of moral turpitude as "a crime involving grave infringement of the moral sentiment of the community"); *see also Ludwig v State*, 969 S.W.2d 22, 29-30 (Tex. App.—Fort Worth 1998, pet. ref'd) (noting that the legislature has condemned family violence when finding Ludwig's offense of violating a protective order to be a crime of moral turpitude); *but see Chambliss v. State*, No. 14-10-00035-CR, 2011 WL 665323, at *2 (Tex. App.—Houston [14th Dist.] Feb. 24, 2011, pet. ref'd) (mem. op., not designated for publication) (refusing to hold that dating violence, as a category of family violence, was a crime of moral turpitude when committed against a man).

9

convicted of assault of a family member in 2009 (5 RR at 101). The State did not emphasize appellant's prior conviction, and indeed, it was not mentioned again until the punishment phase of trial where appellant's mother offered more circumstances regarding the offense to the jury (6 RR at 7). *See Norris v. State*, 902 S.W.2d 428, 441 (Tex. Crim. App. 1995), *overruled on other grounds*, *Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008) (holding that any error in the admission of prior conviction for impeachment purposes was harmless when State elicited the evidence during cross-examination and did not mention the conviction in closing arguments).

Indeed, in their closing arguments during the guilt phase, neither the State nor appellant mentioned appellant's conviction. Instead, both focused on the evidence involving the charged offense and credibility determinations that the jury had to make (5 RR at 108-26). While the State's case against appellant was circumstantial, the evidence regarding appellant's effort to obtain marijuana from Albert, their cellphone communications, the cellphone triangulation testimony establishing appellant's location around the time of the murder, appellant's own admission of seeing Albert at the time he was killed, the missing marijuana, and appellant's admission to a fellow inmate of killing a man support the jury's determination of appellant's guilt (3 RR at 59, 61; 4 RR at 22, 24-25, 29, 84-86, 157-58; 5 RR at 88; State's Ex. 46-49).

Since the evidence introduced at trial supports the jury's verdict and neither side mentioned appellant's prior conviction after its brief introduction, this Court can have more than a "fair assurance" that if the trial court erred by admitting the

10

evidence of appellant's prior conviction for assault of a family member, the error did not influence the jury. *Bagheri*, 119 S.W.3d at 763. As the record supports that the admission of appellant's prior conviction did not have "a substantial and injurious effect or influence in determining the jury's verdict," even if the trial court erred by ruling the evidence admissible, appellant was not harmed. *King*, 953 S.W.2d at 271; TEX. R. APP. P. 44.2(b). As such, even if this Court were to find that appellant preserved his objection to the trial court's ruling, this Court should nevertheless hold that appellant was not harmed and overrule his first point of error.

## REPLY TO APPELLANT'S SECOND POINT OF ERROR

**II.** **Appellant has not met his burden of proving that his trial counsel was ineffective for failing to object to the trial court's shackling of appellant during the punishment phase of trial or of showing that, but for his counsel's alleged ineffectiveness, there is a reasonable probability that the result of the proceeding would have been different.**

In his second point of error, appellant contends that his trial counsel rendered ineffective assistance of counsel by failing to object to the trial court's shackling of appellant during the punishment phase of trial. However, the record is silent regarding appellant's counsel's reasons for not objecting and is undeveloped in regards to what occurred at trial. Because the record does not show if counsel had a plausible strategic reason for not objecting to appellant's shackles during the punishment phase of trial and this Court must strongly presume that counsel's conduct falls within a wide range of reasonable professional assistance, appellant has

11

not met his burden of showing that his trial counsel was ineffective. Further, assuming for the sake of argument that appellant's counsel was ineffective for his failure to object, the record does not support that, but for counsel's ineffectiveness, the result of the proceeding would have been different.

### Standard of Review

The United States Supreme Court has established a two-pronged test for reviewing claims of ineffective assistance of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). To prevail under *Strickland*, a defendant must show 1) by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness, and 2) that, but for counsel's unprofessional error, there was a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694; *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). Unless the defendant makes both showings, the Court of Criminal Appeals has noted that "it cannot be said that his conviction is rendered unreliable by a breakdown in the adversarial process." *Andrews*, 159 S.W.3d at 101.

Reviewing courts examine the totality of counsel's representation and the particular circumstances of the case when evaluating counsel's effectiveness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. When reviewing courts apply this standard, they do so deferentially because "[i]t is all too tempting for a defendant to second-guess counsel's

assistance after conviction." *Id.* at 689; *see Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

Along with a high level of deference, reviewing courts also presume that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Strickland*, 466 U.S. at 689. The defendant has the burden to rebut this presumption by presenting evidence illustrating why counsel acted as he did. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). However, trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). Absent such an opportunity, the reviewing court should presume that counsel had a plausible reason for his actions. *Lopez v. State*, 343 S.W.3d 137, 142-43 (Tex. Crim. App. 2011).

"An ineffective-assistance claim must be 'firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). The reviewing court should not find an attorney's performance deficient unless the challenged conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Indeed, the defendant must show that counsel's error was so serious that he was not functioning as counsel. *Huerta v. State*, 359 S.W.3d 887, 891 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The record

13

on appeal usually will be insufficient to show that counsel's representation was so deficient or lacking in tactics or strategy as to overcome the presumption that counsel's conduct was reasonable and professional. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

## Applicable Law

Due process prohibits the use of physical restraints visible to the jury unless the trial court in its discretion finds that they are justified by the presence of special needs. *Deck v. Missouri*, 544 U.S. 622, 626, 627 (2005); *see Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013). In *Deck v. Missouri,* the Supreme Court discussed how shackling interferes with the presumption of the defendant's innocence until proved guilty, diminishes the defendant's right to "secure a meaningful defense" by potentially limiting communication with his attorney, and undermines the dignity of the judicial process. *Deck*, 544 U.S. at 630-31.

The Court of Criminal Appeals has held that, while a trial court has the discretion to shackle a defendant, the shackling must be "necessary for a particular defendant in a particular proceeding." *Bell*, 415 S.W.3d at 281. The record also "must manifest the trial judge's reasons for restraining a defendant," and if the record fails to contain the court's grounds for restraint, the court errs in shackling a defendant. *Bell*, 415 S.W.3d at 281.

14

After appellant testified during the punishment phase of trial, the trial court noted for the record that:

> [O]nce [appellant] was found guilty, it's the deputy's policy to put him in leg irons. And when he was called to testify here in punishment, he got up and his [*sic*] legs irons started banging around and clanking when he started walking to the witness stand before I had a chance to admonish him or the jury on that.
>
> So I assume the jury may have seen that he had leg irons, but he basically got up and started walking toward the box before I had a chance to say anything. So made that kind of issue moot (6 RR at 21-22).

Appellant's counsel did not object to the shackling of appellant (6 RR).

***Analysis***

a. **Appellant has not meet his burden of showing that his counsel was ineffective for failing to object to the trial court allowing appellant to be shackled during the punishment phase of trial because the record is silent as to his counsel's possible reasons for not objecting.**

Despite appellant's claim that his trial court rendered ineffective assistance of counsel by failing to object when the trial court allowed appellant to be shackled for the punishment phase of trial, appellant has not met his burden of overcoming the strong presumption that his counsel's conduct might have been the result of sound trial strategy because the record does not contain counsel's reasons for not objecting. *Jackson*, 877 S.W.2d at 771.

While appellant asserts that the record at hand supports ineffectiveness because the trial court's shackled appellant without a specific reason and the record indicates

15

that the jury possibly perceived appellant's leg irons, the record in this case does not contain an account of counsel's trial strategy and is underdeveloped regarding whether the jury actually observed appellant's shackles. As such, this Court must presume that appellant's counsel had a plausible reason for not objecting to the court's decision to shackle appellant. *Lopez*, 343 S.W.3d at 142-43. Appellant's trial counsel might not have objected to or pressed the issue of appellant's being shackled when noted on the record because of what he observed in the courtroom or his perception of what the jury could notice. The record is silent in this regard.

Indeed, the record is far from confirming even whether the jury perceived appellant's leg irons. The trial court's language in its statement regarding the shackles is couched in speculation: "I *assume* the jury *may* have seen that he had leg irons" (6 RR at 22) (emphasis added). From his position in the courtroom, appellant's counsel might have observed something different and not wanted to press the issue to avoid developing a negative record for appellant by questioning the jury, giving his own perspective, or allowing the prosecutor to note what he observed. *See Saenz v. State*, 421 S.W.3d 725, 755-56 (Tex. App.—San Antonio 2014)*, reversed on other grounds*, 451 S.W.3d 388 (Tex. Crim. App. 2014) (holding that Saenz did not establish ineffective assistance of counsel for failing to object when the trial court noted its observation that a juror was sleeping during trial because of considerations of trial strategy involving what counsel could establish regarding the sleeping juror). As such, the

16

record is not developed enough to support more than speculation regarding trial counsel's actions.

It is also possible that counsel may have had a different strategic reason for not objecting to the court's decision to allow appellant to be shackled during punishment. *See Bone*, 77 S.W.3d at 833 (noting that the record on direct appeal is insufficient to overcome the presumption that counsel was acting in accordance with tactics or strategy). Perhaps in a murder case built on circumstantial evidence, counsel strategically believed that the sight of appellant shackled could invoke sympathy in members of the jury. As counsel was present in the courtroom and able to observe the reactions of the jurors, counsel might not have objected to appellant's leg irons if he thought the sight would reveal to members of the jury the immediate consequences for appellant of its guilty verdict and hoped the image would sway some members to be lenient in punishment. However, the record does not contain any indication of what counsel had in mind when not objecting on the record when the trial court mentioned that appellant was shackled. Since the record does not contain testimony from trial counsel regarding possible trial strategy, this Court must presume that counsel had a plausible reason for his action.

Because the silent record does not reveal whether appellant's counsel relied on strategic reasons for not objecting to appellant's leg irons during the punishment phase of trial and he plausibly had reasons for not objecting, appellant has not met his burden under the first prong of *Strickland* of showing that his counsel was ineffective.

17

Appellant's counsel has not had the opportunity to explain his conduct, and in such cases, the Court of Criminal Appeals has held that the reviewing court must presume that counsel had a plausible reason for his decisions at trial. *See Lopez*, 343 S.W.3d at 140, 144 (overruling holding of lower court that found no plausible reason for counsel's action when the record was silent). In light of this presumption, appellant has not met this burden of showing that counsel could not have had a strategic reason for not objecting to appellant being shackled with leg irons during punishment. As such, this Court should over rule appellant's second point of error.[2]

---

[2] Additionally, appellant has not shown that his counsel's failure to object was so unreasonable that no other attorney would engage in it. *See Goodspeed*, 187 S.W.3d at 392. Indeed, the record infers the opposite as the trial court stated that it is its deputy's policy to shackle every defendant once he is found guilty (6 RR at 21). From the trial court's own statement, per deputy's police, the court allows every defendant before it to be shackled during the punishment phase of trial. However, the State has not found any reversals arising from this policy of the 177th District Court under its current judge suggesting that the attorneys for those defendants must not have objected as well. *See Stevens v. State*, No. 01-07-00111-CR, 2008 WL 2743947, at *7-10 (Tex. App.—Houston [1st Dist.] July 10, 2008, no pet.) (mem. op., not designated for publication) (holding that the 177th District Court did not abuse its discretion in shackling Stevens throughout his entire trial for security reasons). While trial counsel in other courts have preserved error, *see Wiseman v. State*, 223 S.W.3d 45 (Tex. App.—Houston 2006, pet. ref'd) (granting new trial to defendant who was shackled for the duration of his trial), others have not. *See Cedillos v. State*, 250 S.W.3d 145, 149, 154 (Tex. App.—Eastland 2008, no pet.) (holding Cedillos failed to preserve error when his counsel did not object to him being shackled during trial but finding that the record did not support finding his counsel ineffective for his failure to object).

**b. Assuming that appellant's counsel rendered ineffective assistance of counsel by failing to object to appellant's leg irons during the punishment phase of trial, appellant has not shown a reasonable probability that, but for his counsel's failure, the result of the proceeding would have been different.**

Even if appellant could met his burden of proof to show that his counsel was ineffective for failing to object to the trial court allowing appellant to be shackled during the punishment phase of trial, the record does not help appellant met his burden of proof to show that, but for his counsel's failure, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 694.

Firstly, the record does not reveal whether the jury noticed that appellant was shackled during the punishment phase of trial. While the trial court noted that appellant's leg irons started "banging and clanking" when he approached the stand to testify, the court merely "assumed the jury may have seen that he had leg irons" (6 RR at 21-22). The trial court's assumption suggested the possibility that the jury might have perceived appellant's shackled legs, but nothing else in the record provides any indication regarding the strength of the court's assumption that the jury possibly perceived appellant's leg irons. Without any further indication on the record regarding whether the jury saw appellant's leg iron, this Court can only assume, like the trial court did, that "the jury may have seen" the shackles and speculate what affect, if any, the jury may have given them if perceived (6 RR at 22). *See Ziolkowski v. State*, 223 S.W.3d 640, 644-45 (Tex. App.—Texarkana 2007, pet. ref'd) (holding that

19

Ziolkowski was not harmed by the trial court's erroneous shackling of him during trial when there was no evidence in the record that jurors saw the shackles or that the jury took the shackles to be an indication of Ziolkowski's guilt).

Secondly, because the record only contains the trial court's assumption that the jury perceived appellant's leg irons, it is also an assumption to speculate whether the shackling diminished appellant's presumption of innocence regarding the evidence of his extraneous acts admitted during punishment or contributed to his sentence.[3] *See Deck*, 544 U.S. at 630-31 (shackling diminishes presumption of innocence); *Glasscock v. State*, No. 06-11-00239-CR, 2012 WL 2127514, at *3 (Tex. App.—Texarkana June 13, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that shackling during the punishment phase of trial could infringe upon a defendant's presumption of innocence regarding extraneous offenses). Indeed, the jury's assessment of punishment does not support a reasonable probability that appellant was harmed by his counsel's failure to object to his leg irons as the jury's verdict falls far below the maximum range of punishment and is even below the sentence suggested by the State as appropriate.

---

[3] Discussed below in Reply to Appellant's Third Point of Error, the State introduced evidence of appellant's three prior convictions at punishment as well as evidence of disciplinary infractions appellant incurred while in jail (5 RR at 101; 6 RR at 15-16, 17, 18; State's Ex. 63). Appellant admitted that he had been convicted of his three prior convictions but gave qualifications regarding his two prior assault convictions (6 RR at 15-20). He also denied one of the disciplinary infractions, acknowledged the other two, but then gave qualifications for his actions (6 RR at 15-20).

As appellant was charged with murder, he faced a sentence of incarceration for not less than five but no more than ninety-nine years or life (CR at 192). In its closing argument, the State implored the jury to assess a punishment of sixty years as an appropriate sentence for Albert's murder (6 RR at 29). However, the State also suggested that forty-five years was the minimum punishment the jury should consider (6 RR at 29). Despite the State telling the jury in its closing argument that appellant deserved a sixty years sentence, the jury assessed punishment at fifty years (6 RR at 30). As the jury's verdict on punishment fell in the middle of the range of punishment appellant faced for murder and towards the lower end of the range suggested by the State, the jury's sentence does not suggest that it was influenced to give appellant a harsher sentence if it perceived his leg irons. Indeed, the jury's assessment of punishment does not provide a reasonable probability that appellant was prejudiced by his trial counsel's failure to object, if his failure constituted ineffective assistance of counsel.

Because the record does not suggest a reasonable probability that but for appellant's counsel's failure to object to appellant's leg irons during the punishment phase of trial, the result of the proceeding would have been different, appellant cannot meet his burden of showing that he was prejudiced by his counsel's ineffectiveness, if any. As such, this Court should overrule his second point of error.

21

## REPLY TO APPELLANT'S THIRD POINT OF ERROR

**III.    Appellant was not egregiously harmed by the trial court's failure to instruct the jury that it had to find that appellant committed his extraneous bad acts of fighting, disruptive conduct, and threatening beyond a reasonable doubt.**

In his final point of error, appellant argues that he was egregiously harmed by the court's charge to the jury at the punishment phase of trial because the court failed to instruct the jury that it needed to find beyond a reasonable doubt that appellant committed extraneous bad acts while in jail. While the trial court should have included the instruction, appellant was not egregiously harmed by the omission.

### *Standard of Review*

In determining whether there is reversible error in the jury charge, reviewing courts first decide whether error exists, and if error exists, then determine whether the defendant was harmed by the error. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). When the court erred in its jury charge and the defendant failed to object to the charge at trial, the reviewing court can only reverse if the defendant was egregiously harmed by the error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

Jury charge error is egregiously harmful when "it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In determining whether a defendant was egregiously harmed, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues

22

and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005). The reviewing court looks for actual and not just theoretical harm. *Almanza*, 686 S.W.2d at 171.

### Applicable Law

Article 37.07, section 3 of the Texas Code of Criminal Procedure provides that "evidence may be offered by the State and the defendant as to any matter the court deems relevant to sentencing, including […] any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has been charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. ANN. art. 37.07, §3(a)(1) (West Supp. 2014). The trial court has a duty to instruct the jury sua sponte that evidence of extraneous offenses introduced at the punishment phase of trial must be proven beyond a reasonable doubt before the jury can consider them. *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000); *see* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (requiring the trial court to instruct the jury on the "law applicable to the case").

### Analysis

At the punishment phase of appellant's trial, the trial court failed to include a reasonable doubt instruction regarding the jury's consideration of the evidence of appellant's extraneous offenses and bad acts (CR at 192-95). Consequently, the trial

23

court did not instruct the jury on the law applicable to this evidence which resulted in error in the jury charge. *Huizar*, 12 S.W.3d at 484. However, appellant failed to object to the court's failure to include the appropriate instruction in the jury charge (6 RR at 22). Thus, to obtain relief, appellant must have been egregiously harmed by the trial court's error. *See Sansom v. State*, 292 S.W.3d 112, 132 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). The record as a whole does not support such a finding.

### a. The court's charge as a whole

Firstly, while the jury charge does not contain an instruction informing the jury that it had to find that appellant committed his extraneous bad acts beyond a reasonable doubt before considering them, the charge as a whole does not support or refute a finding that appellant was egregiously harmed.

After charging the jury on the range of punishment and parole law but before its general instructions, the court instructed the jury that "[t]he burden of proof in all criminal cases rest upon the State throughout the trial and never shifts to the defendant" (CR at 194). When conducting an egregious harm analysis on an identical instruction in *Martinez v. State*, this Court's sister court found that the charge did not support or refute a finding of egregious harm. *Martinez v. State*, 313 S.W.3d 358, 367 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that when the charge stated "The burden of proof in all criminal cases rests upon the State throughout the trial and never shifts to the defendant" but did not specifically address the State's burden

24

of proof for adjudicated extraneous offenses and bad acts, the jury charge weighed neither for nor against a finding of egregious harm).

While appellant points to the next paragraph in the charge that instructs the jury that it "may take into consideration all the facts shown by the evidence admitted before you in the full trial of this case" as an instruction granting the jury the ability to consider the evidence without limitations, from the beginning of jury selection, the court and attorneys reiterated that the State's burden of proof was beyond a reasonable doubt (3 RR at 17-21, 69, 76, 77, 79). *But see Allen v. State*, 47 S.W.3d 47, 52 (Tex. App.—Fort Worth, pet. ref'd) (holding that the jury charge did not egregiously harm Allen  but noting that the language in the jury charge informing the jury to "take into consideration all the facts shown by the evidence" was troubling when combined with the State's arguments regarding Allen's extraneous bad acts). Indeed, the court's instruction placing the burden of proof on the State was reminiscent of the court's discussion with the jury panel during voir dire when the court informed the jury that the State bore the burden of proof and appellant bore no burden at all (3 RR at 23). Combined with the repetition in jury selection that the State held the burden of proof and that burden of proof was beyond a reasonable doubt, the court's charge as a whole, especially when considered in light of the legal introduction given to the jury during voir dire, does not show that appellant was egregiously harmed by the court's omission.

Given that the trial court did not give an instruction on the State's burden of proof, the jury could have applied the burden repeated to them again and again during jury selection: beyond a reasonable doubt. However, since there is not a clear instruction in the jury charge, the charge as a whole neither supports nor refutes a finding of egregious harm. *See Martinez*, 313 S.W.3d at 367 (noting that the whole charge weighed neither for nor against a finding of egregious harm).

### b. The state of the evidence

Secondly, the state of the evidence presented at appellant's trial does not support that appellant was egregiously harmed by the trial court's charge.

Despite being circumstantial, the testimony and other evidence presented at the guilt phase of trial proved beyond a reasonable doubt that appellant shot Albert in the HEB parking lot and took the two ounces of marijuana that Albert had agreed to sell him (3 RR at 59, 61; 4 RR at 22, 24-25, 29, 157-58; 5 RR at 88). Appellant's cellphone records established his movements and location around the time of the murder and place appellant at the scene of the crime (State's Ex. 46-49). And additionally, appellant later admitted to the murder (8 RR 84-86).

As for the evidence regarding appellant's prior extraneous convictions, the State introduced the judgment from appellant's misdemeanor possession of marijuana, and appellant admitted to fighting with his father and being convicted of one other assault, proving them beyond a reasonable doubt (5 RR at 101; 6 RR at 15-16, 17, 18; State's Ex. 63). *See Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004)

26

(holding that prior final convictions do not need to be re-proven beyond a reasonable doubt to be admissible under Article 37.03, section 3 when the conviction has already been proven in another proceeding).

As for the evidence regarding appellant's disciplinary problems while in jail, the record shows that while appellant denied fighting, he acknowledged his other disciplinary violations:

> **[Appellant]**: …[B]ut all those charges are not correct.
> **[Prosecutor]**: Okay. So this fighting case --
> **[Appellant]**: The fighting case, that was horseplaying. We both ended up with a fighting case. It was horseplaying.
> **[Prosecutor]**: Okay. And then disruptive conduct?
> **[Appellant]**: Yes, I did because they had a shakedown and some of my food was stolen.
> **[Prosecutor]**: Okay. So you were the victim in that one, too. But you still lost your visitation for that?
> **[Appellant]**: Yes.
> **[Prosecutor]**: And then threatening, also. Who were you threatening?
> **[Appellant]**: We was watching TV and a dude came into the tank thinking he was running things and changed the TV and me and him had some words.
> **[Prosecutor]**: Okay. And so you lost your privileges for seven days?
> **[Appellant]**: Yes (6 RR at 16-17).

Appellant's testimony and his disciplinary records are the only evidence the State offered to prove appellant's extraneous bad acts; however, his disciplinary problems of fighting, disruptive conduct, and threatening are not as serious as the charged offense of murder and his prior convictions for assault (6 RR at 5-16, 17, 18; State's Ex. 63). *See Martinez*, 313 S.W.3d at 368 (holding that in light of the evidence of Martinez's guilt of aggravated robbery and criminal history, the evidence of his

27

unadjudicated offenses did not make the case for punishment clearly more persuasive). In light of his prior convictions for assault and the jury's determination of his guilt in Alfred's murder, appellant's disciplinary infractions of fighting, disorderly conduct, and threatening would not have made the case for appellant's punishment more persuasive. Thus, he was not egregiously harmed by the evidence of them.

### c. The arguments of counsel

Additionally, the arguments of counsel indicate that appellant was not egregiously harmed by the trial court's omission of the instruction in the jury charge. The State did not mention appellant's prior disciplinary infractions, much less his prior convictions, in its arguments on punishment (6 RR at 26-29). *See Zarco v. State*, 210 S.W.3d 816, 827 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that Zarco was not egregiously harmed by the lack of instruction regarding the State's burden of proof regarding extraneous offense evidence at the punishment phase even though the State did mentioned the evidence in closing). While appellant's counsel did mention appellant's "record of some misconduct," he pointed out to the jury that, while "any record […] is serious in some perspective," appellant's prior history was "not egregious" (6 RR at 25). The arguments of counsel and their lack of emphasis on appellant's extraneous offenses and convictions weigh against a finding of egregious harm. *See Huizar v. State*, 29 S.W.3d 249, 250 (Tex. App.—San Antonio 2000, pet.) (finding that omission of the State's burden in the jury charge at

28

punishment did not egregiously harm Huizar despite the State relying on "substantial evidence of extraneous conduct" and remarking during closing arguments that "the State had no burden of proof during the punishment trial").

### d. Other relevant information

Finally, the record does not support a finding of egregious harm because the jury's assessment of punishment was far below the maximum available sentence for appellant's offense of murder. *Martinez*, 313 S.W.3d at 369 ("In addressing other relevant information, we may consider the severity of the punishment assessed, which may indicate egregious harm in some situations."). Appellant faced a punishment range of five years to ninety-nine years or life incarceration, but the jury assessed fifty years as his punishment (CR at 192, 197, 199; 6 RR at 30-31). *See Huizar*, 29 S.W.3d at 250 (concluding that Huizar did not suffer egregious harm from the trial court's failure to instruct the jury on the State's burden at punishment when the punishment assessed by the jury was within the authorized range of punishment). Appellant's sentence was well within the range authorized for his offense of murder.

Indeed, not only was appellant's sentence within the middle of the authorized range of punishment, the jury's assessment of punishment was also below the sentence the State request that it give appellant (6 RR at 29). In its closing arguments, the State asked that the jury assess sixty years for appellant's punishment but told the jury not to assess anything less than forty-five years (6 RR at 29). The fifty year sentence assessed by the jury is much closer to the minimum range suggested by the

State in its argument. *Batiste v. State*, 73 S.W.3d 402, 408 (Tex. App.—Dallas 2002, no pet.) (finding no egregious error when the jury's assessment of punishment was far below the maximum available even though the State suggested that the jury start "at the top" of the punishment range).

Because the jury's assessment of punishment was in the middle of the authorized range for appellant's offense of murder and was below the sixty year sentence suggested by the State, appellant's sentence does not support a finding that he was egregiously harmed.

Indeed, the record as a whole does not support a finding that appellant was egregiously harmed by the trial court's jury instruction. Because the jury charge as a whole, the evidence presented, the arguments of counsel, and the jury's assessment at punishment do not suggest that appellant was egregiously harmed by the court's charge, this Court should overrule appellant's third point of error and affirm his conviction.

## CONCLUSION

The State of Texas respectfully urges the Court to overrule appellant's points of error and affirm his conviction.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ *Carly Dessauer*

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083
dessauer_carly@dao.hctx.net
curry_alan@dao.hctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 7,983 words, based upon the representation provided by the word processing program that was used to create the document.  TEX. R. APP. P. 9.4(i).

/s/ *Carly Dessauer*
_____

**CARLY DESSAUER**
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

## CERTIFICATE OF SERVICE

The State will serve a copy of the foregoing instrument to appellant's attorney

though TexFile:

Angela L. Cameron
Assistant Public Defender, Harris County
1201 Franklin Street, 13th Floor
Houston, Texas 77002
angela.cameron@pdo.hctx.net

/s/ *Carly Dessauer*
CARLY DESSAUER
Assistant District Attorney
Harris County, Texas
 1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
State Bar No. 24069083

Date:  July 9, 2015